POLSTON, J.
Appellant John H. Braxton appeals the December 9, 2002 final judgment of the trial court relating to his contest of the 2000 Holmes County General Election for the sheriffs race, pursuant to section 102.168, Florida Statutes (2000). Braxton lost the race to appellee Dennis Lee by five votes. Braxton brought an action, alleging fraud in the election process (Count I), alleging gross negligence (Count II), and seeking declaratory and injunctive relief because of improper counting of ballots (Count III).
The trial court conducted a bench trial and, after hearing evidence for two days, ruled in favor of appellees on their motion for directed verdict,[1] which pertained to the fraud and gross negligence counts. We affirm the trial court’s ruling rejecting Braxton’s claims of fraud and gross negligence in the election process because he failed to present a prima facie case. See Sec. Abstract & Ins. Co. v. Fid. Nat’l Title Ins. Co. of Pa., 668 So.2d 658 (Fla. 4th DCA 1996)(affirming the trial court’s involuntary dismissal at the close of plaintiffs case because the plaintiff failed to establish a prima facie case); Robinson v. Wright, 425 So.2d 589 (Fla. 3d DCA 1982)(same); Fla. R. Civ. P. 1.420(b). We also affirm the trial court’s ruling that negligence in the election causing substantial noncompliance with the election laws was not so pervasive that it thwarted the will of the people. Accordingly, we agree with appellees that the election should not be voided. See Beckstrom v. Volusia County Canvassing Bd., 707 So.2d 720, 725 (Fla.1998)(ruling that “if a court finds substantial noncompliance with statutory election procedures and also makes a factual determination that reasonable doubt exists as to whether a certified election expressed the will of the voters, then the court in an election contest brought pursuant to section 102.168, Florida Statutes (1997), is to void the contested election even in the absence of fraud or intentional wrongdoing”).
After dismissing the claims of fraud and gross negligence, the trial court indicated that it would manually recount the under-votes [2] in the election. After this recount, two votes were added to each candidate’s vote totals. Therefore, Lee won the election by five votes.[3] Braxton argues that the trial court erred by not considering certain absentee ballots rejected by the Canvassing Board and by not properly recounting all of the undervotes in its manual recount ordered. We agree and, therefore, reverse.

I. Rejected Absentee Votes

At trial, Braxton requested the trial court to review 25 rejected absentee ballots in its recount of ballots. The Canvassing Board rejected the 25 ballots because it determined that the signatures on the *960 ballot envelopes did not sufficiently match the signatures on file to qualify them as legal ballots. The requirements for comparing signatures during canvassing of absentee ballots are as follows:
The canvassing board shall, if the supervisor has not already done so, compare the signature of the elector on the voter’s certificate with the signature of the elector in the registration books to see that the elector is duly registered in the county and to determine the legality of that absentee ballot. An absentee ballot shall be considered illegal if it does not include the signature and the last four digits of the social security number of the elector, as shown by the registration records, and either:
a. The subscription of a notary or officer defined in Item 6.b. of the instruction sheet, or
b. The signature, printed name, address, voter identification number, and county of registration of one attesting witness, who is a registered voter in the state.
However, an absentee ballot shall not be considered illegal if the signature of the elector or attesting witness does not cross the seal of the mailing envelope or if the person witnessing the ballot is in violation of s. 104.047(3). If the canvassing board determines that any ballot is illegal, a member of the board shall, without opening the envelope, mark across the face of the envelope: “rejected as illegal.” The envelope and the ballot contained therein shall be preserved in the manner that official ballots voted are preserved.
Section 101.68(2)(c)l., Fla. Stat. (2000). These 25 ballots rejected as illegal are sufficient to change or place in doubt the result of the election. See § 102.168(3)(c), Fla. Stat. (2000)(stating that grounds for contesting an election include “[rjeceipt of a number of illegal votes or rejection of a number of legal votes sufficient to change or place in doubt the result of the election”).
The trial court refused to consider these 25 ballots because the Canvassing Board had already considered and ruled on them.[4] The Florida Supreme Court, in Gore v. Harris, 772 So.2d 1243 (Fla.2000), rev’d on other grounds, Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000), held:
Although the protest and contest proceedings are separate statutory provisions, when a manual count of ballots has been conducted by the Canvassing Board pursuant to section 102.166, the circuit court in a contest proceeding does not have the obligation de novo to simply repeat an otherwise-proper manual count of the ballots. As stated above, although the trial court does not review a Canvassing Board’s actions under an abuse of discretion standard, the Canvassing Board’s actions may constitute evidence that a ballot does or does not qualify as a legal vote. Because the appellants have failed to introduce any evidence to refute the Canvassing Board’s determination that the 3300 ballots did not constitute “legal *961 votes,” we affirm the trial court’s holding as to this issue.
772 So.2d at 1260 (emphasis added). Lee argues that the trial court followed Gore v. Harris because the trial court properly considered the Canvassing Board’s actions as evidence. We agree with Lee that the trial court properly considered the Canvassing Board’s actions as evidence, but agree with Braxton that the trial court erred by not considering other evidence regarding whether the ballots constitute legal ballots. At trial, Braxton proffered evidence, including testimony from those who witnessed signatures on the rejected ballots and from actual signing voters, to refute the Canvassing Board’s determination that the 25 ballots did not constitute legal votes. In Gore v. Harris, no contravening evidence was presented.
Appellees also argue that because Gore v. Harris was reversed by the United States Supreme Court, Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388, it has no application to this case. We do not read the United States Supreme Court’s decision to reverse Gore v. Harris on this issue, although the Florida Supreme Court’s decision on this issue was subject to serious criticism in various concurring and dissenting opinions. See Bush, 531 U.S. at 105,121 S.Ct. 525 (stating “it is not necessary to decide whether the Florida Supreme Court had the authority under the legislative scheme for resolving election disputes to define what a legal vote is and to mandate a manual recount implementing that definition”); id. at 120, 121 S.Ct. 525 (Rehnquist, C.J., concurring; the Florida Supreme Court’s decision to conduct a manual recount on undervotes to determine voter intent was a departure from the legislative scheme); id. at 131, 121 S.Ct. 525 (Souter, J. dissenting; other interpretations of Florida’s election law were possible, and “some might have been better than those adopted by the Florida court’s majority”); id. at 135-36, 121 S.Ct. 525 (Ginsburg, J., dissenting; “I might join THE CHIEF JUSTICE were it my commission to interpret Florida law”). Because the Florida Supreme Court was not reversed on this issue, and on remand did not vacate its decision, we cannot ignore its ruling. See Gore v. Harris, Case No. SC00-2431, 779 So.2d 270, Order on Remand (Fla. Dec. 14, 2000)(unpublished order)(dismissing case on remand); Gore v. Harris, 773 So.2d 524 (Fla.2000)(opinion after Dec. 14 order dismissing case, on remand).
Therefore, in accordance with Gore v. Harris, we direct the trial court, on remand, to consider all the relevant evidence, not just the Canvassing Board’s determination, in its finding of whether these 25 absentee ballots should be rejected as illegal ballots or counted.

II. 14 Undervotes Not Counted

The trial court recounted 136 of the 150 undervotes. Braxton argued at trial, and on appeal, that the additional 14 un-dervotes should have been recounted. The Supervisor of Elections indicated that at least some of these undervotes were likely in the ballots that had been segregated as undervotes in the presidential election, but that additional work would need to be performed to identify those in the sheriffs race. The trial court erred by refusing to consider these additional undervotes in its manual recount. The trial court was apparently concerned with identifying which ballots had been considered as undervotes by the Supervisor of Elections. Although the Supervisor testified that the segregated presidential election undervotes could be run through the machine again to identify any undervotes in the Sheriffs race, the trial court prevented any effort to do so. Therefore, we direct the trial court, on *962 remand, to attempt to identify and consider these additional undervotes.
Lee argues that these “missing” 14 un-dervotes were only raised by Braxton during post-trial proceedings, therefore the trial court properly did not consider them in the manual recount. However, the record indicates that Braxton sufficiently raised these missing undervotes during trial and did not waive the issue.

III. 3 Spoiled Ballots

Three ballots from Precinct Ten were apparently mistakenly spoiled by a poll worker, and were not counted in the certified results. On remand, we direct the trial court to consider these ballots.
We find no error in the trial court’s rulings on the additional ballots at issue in the appeal.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTIONS.
ERVIN AND BARFIELD, JJ., concur.

. Although the ore terms motion was characterized as a motion for directed verdict, and referred to as that in the final judgment, it is treated as a motion for involuntary dismissal pursuant to Fla. R. Civ. P. 1.420(b), because it was a bench trial.

. The undervotes were those ballots without a vote in the sheriff's race. For example, a voter may have chosen to not vote in the sheriff’s race, or may not have properly marked the ballot for the machine to read it.

.The Canvassing Board certified 3,674 votes for Braxton and 3,679 votes for Lee. The trial court counted an additional two votes for each candidate, therefore totaling 3,676 votes for Braxton and 3,681 votes for Lee.

. Ms. Clyatt [Braxton's counsel]: And you are^ — you are saying you are not reviewing the actions in any way, whether it’s de novo or under abuse of discretion, you simply are declining review of the Canvassing Board's action with regard to the absentee ballots total?
The Court: Envelopes.
Ms. Clyatt: Envelopes or their count of them. The Court: Correct. Because I believe the Canvassing Board acted properly in regards to the absentee ballots slash envelopes, and acted in good faith. And I have no belief whatsoever that the law requires me to review those. I believe once they reviewed them, it’s [ ] over.